UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KEOTA LEE MILIGI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:15-CV-00819 |
| ) | |
| LOGAN'S ROADHOUSE, INC. ) | JURY DEMAND |
| ) | |
| Defendant. ) | |
| ) | |

# FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, **KEOTA LEE MILIGI** (hereinafter "MILIGI" or "Plaintiff") by and through counsel, and amends her Complaint as follows against the Defendant, **LOGAN'S ROADHOUSE, INC.** (hereinafter "Defendant Logan's") pursuant to F.R.C.P. 15(a)[1], seeking relief for discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. to correct unlawful employment practices on the basis of race and to provide appropriate relief to Plaintiff who was adversely affected by such practices.

## PARTIES

1. Plaintiff, is a resident of the United States who resides in Gallatin, Tennessee. She is and was at all times relevant to this Complaint a citizen of the State of Tennessee and a resident of Sumner County.

---

[1] Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading 'once as a matter of course at any time before a responsive pleading is served.'" Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

1

2. Defendant, Logan's, is, upon information and belief, a corporation organized under the laws of the State of Tennessee, with its principal place of business at 3011 Armory Dr., Suite 300 Nashville, TN 37204.

3. Plaintiff performed her duties at an establishment identified as Logan's Roadhouse located at 1007 Village Green Crossing, Gallatin, TN 37066.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et. Seq.). This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 451, 1331, 1343, and 1367.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the present claim occurred within this judicial district.

6. On or about February 24, 2014, Plaintiff filed a charge of discrimination (No. 494-2014-0766) against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination, color, national origin and/or retaliation.

7. On or about May 28, 2015, Plaintiff received a notice of suit rights from the EEOC, advising her that she had 90 days to file against Defendant under Title VII.

8. Plaintiff has filed a Complaint within the aforementioned 90 day right to sue period and all conditions precedent to the institution of this lawsuit have been fulfilled.

9. At all relevant times, Defendant(s) have continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h). Furthermore, Defendant(s) have continuously operated their business in Tennessee and this jurisdiction with at least fifteen employees.

10. The unlawful discrimination and/or retaliation alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

11. Plaintiff asserts she was discriminated against on the basis of her race, color, and/or national origin. As such, Plaintiff falls within the protected class as a "person" and/or female employee as defined in 42 U.S.C. § 2000e(a) who applied for and accepted employment with Defendant.

12. Defendant(s) are "employer(s)" as that term is defined by 42 U.S.C. § 2000e(b).

## STATEMENT OF FACTS

13. The discriminatory conduct alleged herein occurred in connection with Plaintiff's employment with Defendant as a food prep working at Defendant's restaurant, Logan's Roadhouse located at 1007 Village Green Crossing, Gallatin, TN 37066.

14. Since at least March 2013, Defendant has engaged in unlawful employment practices at its Gallatin, Tennessee location in violation of § 703(a) Title VII, 42 U.S.C. § 2000e-2(a) and/or Section 704(a) Title VII, 42 U.S.C § 2000e-3(a).

15. Defendant(s)' discriminatory practices include, but are not limited to: (1) creating or permitting a hostile work environment heavily charged with discrimination; (2) maintaining wages, job assignments and other conditions of employment that unlawfully operate to deny equal opportunity to Plaintiff because of her race, color, and/or national origin; and (3) creating a hostile, racially charged work environment such that no reasonable person would be expected to endure. Therein, Plaintiff submitted her resignation and avers such act as constructive discharge.

16. Plaintiff was hired to perform as a server at Logan's Roadhouse on or about November 2, 2003.

17. Plaintiff was under the direct supervision of Doug Boomer, Roger Thurman, Cecilia Thomas, Scott (last name unknown) as general manager who as a member of management had the authority to materially alter the terms and conditions of Plaintiff's employment.

18. In the fall to 2012, prior to the election of Barak Obama, a member of management from corporate headquarters stated to Plaintiff "be careful who you vote for… I might have to mess with you or fire you…I already know who you are going to vote for." A week or so later, the same individual stated to Plaintiff "new rule…from now on…we only speak English…no spanish allowed in the kitchen."

19. In the fall of 2012, Doug Boomer who is a manager stated to Plaintiff "loose the fake accent." It was clearly indicating that Plaintiff being articulate was a false front and that she in fact had a less articulate accent more consistent with individuals of similar and/or consistent national origin and/or ancestry.

20. In the fall of 2012, a male server stated to Plaintiff "a black girl hit on me today and I said I don't date black girls…I have to be nice because its my job…what would I look like dating a black girl…what would our kids look like or go as…" Plaintiff responded in a clear irritable tone admonishing him that she was of interracial descent.

21. In early 2013, a manager Roger Thurman stated to Plaintiff "if I am white man making 13.00 an hour…you know he [another Hispanic employee] is lying about making 15.00 an hour because he is Mexican." Plaintiff admonished Roger Thurman that individuals are to be paid commensurate with their specific race.

22. In early 2013, Barry David, stated to Plaintiff "because of Barak Obama…my parents had to fire ten of their workers so that people like you can lay off welfare and food

4

stamps instead of working." Plaintiff admonished him that she does work and performs her duties each day.

23. On or about March 1, 2013, Plaintiff performed her duties as scheduled. Plaintiff prepared fresh salads and/or desserts. In the manager's office on the board with employees' schedules displayed, there was a theme captioned "Top Ten Reasons Why I like Working at Logan's." Rated as number two was a caption "fading out all the blacks." Plaintiff was only of one of two African American employees at this location. Therein, the racial slur on the board was clearly directed at Plaintiff. In addition to and/or in the alternative, the racial slur offended Plaintiff irrespective who it was directed at.

24. On or about March 5, 2013, John (last name unknown) stated "I think all the black people working here should be paid less money than all the other races working here." Plaintiff reported this discriminatory act and/or slur to Roger Thurman the following day. Roger Thurman committed to speaking with "John." Plaintiff avers that Roger Thurman as a member of management failed to properly execute any remedial measures to such discriminatory acts and/or slurs.

25. During the month of December 2013, Robert Thurman who was an employee related to the manager Roger Thurman, stated to Plaintiff "I am pulling my daughter out of Guild because there are too many black kids and she might feel out of place being the only white kid." Thereafter, Robert Thurman asked Plaintiff "do you know what I mean" seeking affirmation of his sentiment.

26. On or about January 17, 2014, Roger Thurman stated "no excuses Manny, the only people that have excuses are people in Somalia…oh wait a minute, that's right, I forgot who

5

Case 3:15-cv-00819   Document 13   Filed 11/18/15   Page 5 of 19 PageID #: 32

I was talking to." Plaintiff was in the kitchen where Roger Thurman communicated this racial slur.

27. On or about February 5, 2014, David Houston stated "I apologize if this seems a little racist but I never heard a Mexican person count in English before…most count in Spanish."

28. On or about February 8, 2014, Plaintiff inquired about bread/cruton color with Doug Boomer who responded that the color should match his skin tone. Doug Boomer pointed to his arm demonstrating a "tan" tone of his arm reflecting a general white skin pigment. Doug Boomer further stated "they can't be burnt like well you know who I am thinking of." It was self evident that Doug Boomer was referring to another African American employee. This racial slur offended plaintiff as the comment was expressed directly to her.

29. On or about February 11, 2014, Daniel communicated to Plaintiff that she must choose "what side you are going to be on…the Cuban side or the American side…we need to bring back segregation." Plaintiff reported this to management.

30. On or about February 16, 2014, Mary (last name unknown) said to another female employee "what do you call a stoned Mexican? A baked bean." Plaintiff asked Mary to repeat the racial joke and admonished her that it was not humorous and that she was of African Cuban descent. Mary responded, "that must mean you are really horny and like to fuck a lot of people." Plaintiff advised Mary that there was a meeting recently held admonishing employees about racial slurs. Management failed to execute any remedial measures beyond this. Mary responded "yeah I know" confirming and acknowledging the meeting.

31. On or about February 21, 2014, Doug Boomer asked Plaintiff "what do your parents have in common…I just don't understand what they would have to talk about." Doug Boomer had direct knowledge that Plaintiff's father was African American\Cuban and her

6

mother was Caucasian of Italian descent. Doug Boomer bumped Antonio (last name unknown) into Plaintiff and said "bad cholo…stop running into Keota" often interpreted as a male, especially in a Mexican-American community, who is a member of a street gang.

32. On or about February 21, 2014, Doug Boomer communicated to Daniel (last name unknown) that a corporate officer was coming to the Gallatin location and they should be careful in what they express. Daniel responded "so no racial slurs?" Doug Boomer responded that it would best if Daniel did not communicate anything and that he "was a mute."

33. On or about February 23, 2014, Daniel stated to another female near Plaintiff "I am going to show you some Somolians they are not dark skin anymore they are blue."

34. On or about February 28, 2014, Tano Cortez stated "fucking black man" to which Kathy and Rita responded sarcastically "oh no racist remarks" mocking Plaintiff for complaining to management about racial slurs.

35. On or about March 1, 2014, Roger Thurman stated "stop Manny I know you don't wash your hair but that does not mean you have to get mine dirty too." Plaintiff responded, "what is that supposed to mean?" Roger Thurman rebuffed Plaintiff's inquiry into the discriminatory statement.

36. On or about March 1, 2014, Roger Thurman stated to Rosa (last name unknown) "I put your potatoes in the oven because you know how they are…you know how those people are….you know how they do…they're lazy…they don't do anything." Plaintiff and Manny were the only "people" working that day in the kitchen to whom he could have referred to.

37. On or about March 6, 2014, Daniel says "Mexicans are taking over this place..we own Logan's."

38. On or about March 6, 2014, Plaintiff communicated to Daniel that she dyed her hair. Daniel responded that he dyed his hair also. Plaintiff responded "really I never see you with dyed hair." Daniel responded that "was because I dye my pubic hairs." Plaintiff responded that she was referring dying her hair on head. Daniel responded "I dye my pubic hairs every season like you dye your hair too." Cecilia the manager responded by throwing a piece of ice at him.

39. On or about March 11, 2014, Daniel stated "we need to go back to segregation Mexicans only." Daniel twice called Manny "Kunta Kinte" and "whip it up and smack it up like Kunta Kinte." Daniel further stated to Manny that Rosa did not like Manny and "that she does not like black people …and she said get to work boy." Plaintiff admonished Daniel to stop communicating such racial slurs. Daniel responded that "the cops will arrest Manny first Keota" to which Plaintiff asked "why is that Daniel? Because he is tall?" Daniel responded "no because he is black…they will taser him and jump him and beat him down before they will me."

40. Or about March 12, 2014, Manny stated that he "was sick of Mexicans" to which Daniel responded "Kunta Kinte…whip it…beat it…like Kunta Kinte." Thereafter, Daniel told Sheena (last name unknown) "just call him what he is a boy." Plaintiff was in the kitchen subjected to the hostile and racially charged work environment.

41. On or about March 12, 2014, Manny said to Daniel "this Mexican guy gave his kid salsa." Daniel responded "this black gave his kid chicken." Daniel stated to Manny "I hate your people….I don't like your kind." Plaintiff was in the kitchen subjected to the hostile and racially charged work environment.

8

Case 3:15-cv-00819   Document 13   Filed 11/18/15   Page 8 of 19 PageID #: 35

42. On or about March 23, 2014, Daniel stated to Plaintiff "black people run around looking around for different races of women and men who can make them a pretty baby…they don't fall in love…they just go around trying to make pretty kids."

43. On or about March 27, 2014, Daniel stated "black people play dice…Keota do you want to play dice." Plaintiff responded that she was of African Cuban descent. Daniel responded "so…its from a different country…that don't mean you ain't black." Manny responded "I am a very intelligent black man." Daniel responded to Plaintiff and Manny "that ain't what they said about your people in 1944." Plaintiff was part of the conversation between Manny and Daniel.

44. On or about April 1, 2014, Daniel said to Plaintiff "that is ok Keota…we will just blame it on the black guy" referring to police. Daniel continued to bring Plaintiff into a conversation with Manny. Daniel stated to Plaintiff "you know how they are…you know what will happen if the police will come and put him down…they do that all the time." Plaintiff responded "no they don't." Daniel responded "what world do you live in…you know they steal."

45. On or about April 10, 2014, Daniel said to Manny in front of Plaintiff "get your black skin away from me Kunta Kinte."

46. On or about April 13, 2014, a waitress said to Daniel "come here let me put this bread next to your skin so I can see if its too dark to serve to my table…I can use it thank you Daniel it will pass for my table. Waitress and Daniel looked at Plaintiff in the course of communicating the racial slur.

47. On or about April 15, 2014, Daniel stated to Plaintiff and Manny "I am going to join the KKK…I am going to be the first Mexican in the KKK." In the course of communicating

9

the racial slur, Daniel made a white hat out of paper towels or similar material, and placed it atop his head reminiscent of a KKK hood. Plaintiff communicated this to human resources department at corporate headquarters.

48. On or about April 18, 2014, Daniel stated to Manny "sell it Kunta." Plaintiff responded "why would you say that standing right next to the boss?" The manager Doug Boomer who was standing next to Daniel did not admonish Daniel for the racial slur and/or execute any progressive disciplinary measure to abate the hostile and racially charged work environment.

49. On or about April 18, 2014, Daniel stated "black people don't stick together…Mexicans stick together no matter what…Black people need to learn how to stick together but they won't." Daniel further stated to "Manny please don't get your friend hired here...stuff is going to come up missing…you know how they are." Plaintiff responded that she was "half black." Daniel responded "you don't try to get in touch with it because you work…Black men don't work…they're lazy like Manny."

50. On or about April 18, 2014, Daniel stated to Plaintiff "you don't know your African American heritage…you don't know who [a particular person] is…oh my God." Plaintiff responded that "I know who Kunta Kinte is and I don't like it when you say whip it and rip it like Kunta Kinte." Daniel responded "Whip it rip it like Kunta Kinte."

51. On or about April 18, 2014, Daniel stated to Colton (last name unknown) who was going to be a police officer, "I hope he arrests Manny and shoots him…that's ok Colton you can shoot him…I don't care if he is reaching for a black and mild [cigar]…we will say he has a gun even if he doesn't…you will be a hero Colton…its ok you won't get into trouble… you will be a hero." Plaintiff was in the kitchen subjected to the hostile and racially charged work environment.

10

Case 3:15-cv-00819 Document 13 Filed 11/18/15 Page 10 of 19 PageID #: 37

52. On or about April 24, 2014, Antonio stated to Plaintiff that Defendant did not want Manny employed any longer because he is black. Plaintiff responded to Antonio that she was half black. Antonio further stated they did not want Manny employed because is "very dark and he runs long ticket times….they said they don't want any more black people to work here anymore…they said they want to run them off" Antonio communicated this in Spanish to Plaintiff. Antonio communicated to Plaintiff that waitresses and members of management expressed such sentiments.

53. On or about May 27, 2014, Alberto Bravo stated near Plaintiff to a management member "every day with this fucking shit… one black guy in the morning…one white boy at night." Roger Thurman who is a manager looked at Alberto Brava and smiles affirming the sentiment.

54. On or about June 16, 2014, Daniel stated to Plaintiff "why do you talk like you're white…you said that so white…right Rosa...look at the way she looks and she talks like she is white." Rosa who is an employee was nearby during the communication.

55. On or about when June 22, 2014, Colton stated aloud near Plaintiff "I want some collard green? Daniel responded "where is Manny…he would know how to make them." Andrew who is a manager stated "ya'll know you can't talk like that now." Andrew further failed to execute any progressive and/or remedial measures to abate the hostile and racially charged work environment.

56. On or about July 1, 2014, Daniel stated aloud near Plaintiff "I am sick of black people…we need to be segregated…I told you I don't want your black hands on me…I don't want to turn black…stop touching me."

11

Case 3:15-cv-00819   Document 13   Filed 11/18/15   Page 11 of 19 PageID #: 38

57. On or about July 3, 2014, Tano Cortez stated to Plaintiff "I am a Nazi" and started laughing. Numerous employees aloud in the restaurant repeated this comment.

58. On or about July 5, 2014, Daniel stated to Plaintiff "I need meat for steak salads…what's really going on at the Logan's." Plaintiff responded "I'll tell you what's going on…I am sick of hearing we need to be segregated and get your black hands off of me…its not funny and I don't want to hear it everyday I come to work."

59. On or about July 5, 2014, Barry David stated to Plaintiff "why are you wearing a Puerto Rican belt…Cubans and Puerto Ricans hate each other…they would riot every time they get near one another in the 80s…they could not even go in the same street…yeah they can't stand one another…take that belt off." Plaintiff refused to obey this discriminatory instruction.

60. On or about July 5, 2014, Daniel stated to Plaintiff "there is a war against Keota."

61. On or about July 8, 2014, Daniel stated to Manny "you know how they are Rosa…they steal…he can't help it…it's in his DNA." Plaintiff admonished Daniel stating "that was racist" to which Daniel denied responding "it ain't racist if it's true."

62. On or about July 20, 2014, Daniel stated to Manny "don't touch me Manny…I told you I don't want to turn black…we need to bring back segregation...Kunta Kinte…I am sick of black people…we need to get rid of black people." Tanya (last name unknown) who was nearby responded "me too" in front of Plaintiff. Daniel futher stated "you are really black Manny…your family must be from Konga…or something…you are like really black."

63. On or about July 20, 2014, Daniel stated to Plaintiff and Manny "my mom likes black people even though they broke into her house two time…she needs to hate them like me so that she won't get robbed again…I hate all black people…my mom needs to take a lesson and be fed up like me with black people so she won't get robbed again."

12

64. On or about July 7, 2014, Daniel stated to Rosa near Plaintiff "I say all the racist things I want…I just laugh at the end and pretend I am joking and they let me say whatever I want…that is ok Rosa…we wont tell that that is what we really think" while laughing.

65. On or about July 29, 2014, Daniel burns a cross in front of Plaintiff and Manny made out of sticks and tells Manny "we don't like your kind around here…you are in the wrong neighborhood boy…we need to be segregated…you need to leave…Kunta Kinte…sell it…I am a Nazi boy…I am the first Mexican Nazi…don't tell my mom she likes you black people."

66. On or about July 29, 2015, John (last name unknown) said to Manny aloud "they don't let black people in my golf club…you know they steal…black men steal…they are lazy and cannot work." Plaintiff was nearby with actual knowledge by John.

67. On or about July 31, 2014, John yells aloud "Manny get your black ass over here now." Plaintiff was nearby with actual knowledge by John.

68. On or about August 3, 2014, Daniel states to Plaintiff "Man I want to slap a black person today."

69. On or about August 5, 2014, Daniel refers to Manny as "Kunta Kinte." Plaintiff asked Daniel as to why he burned the cross and put it in front of Manny. Daniel responded he "saw it on tv." Daniel repeats racial slurs such as he wants "collard greens," "I want water melon," and "I want a colt 45." Manny states "Doug Boomer you don't hear that ?." Doug Boomer responded "what?...I like colt 45s too." Daniel responds in front of manager Doug Boomer "Manny I hate your kind."

70. On or about August 22, 2014, Antonio states to Plaintiff that Manny called him a wetback. Antonio thereafter stated to Manny that if he called him a wetback again he "would shoot him…I have not told on you because you are my friend." Plaintiff reported the incident to

13

Roger Thurman and stated "Manny and Antonio are talking racist to each other…I just wish I could come to work and not have to hear this everyday…I wish someone could something about it…you are a manager right ?" Roger Thurman responded to the others stating "ya'll just have to learn how to talk to each other." Alberto responded "I am going to try Roger but I don't know…its going to be hard." Roger Thurman was clearly on notice of discriminatory practices occurring within the workplace and that Plaintiff was being subjected to this hostile and racially charged environment." Roger Thurman failed to enact and/or execute policies set out by Defendant to abate such discriminatory practices that Plaintiff had to endure.

71. On or about September 2, 2014, Plaintiff called corporate headquarters to report the discriminatory practices. Plaintiff either left a message or spoke with a corporate representative disclosing the incidents referenced herein.

72. On or about September 3, 2014, Kenny (last name unknown) who was a corporate representative appeared at the Logan's in Gallatin and inquired of Antonio if he had any problems with Manny communicating racially charged language. Antonio responded in the negative and that each were joking with the other. Plaintiff stated to Antonio that if you "don't want to admit it…you don't keep bring it up that Manny keeps calling you names every day." Antonio responded that "its ok…we are just joking." Kenny responded that such joking was not permitted and that "we're going to have a problem if somebody gets offended." Plaintiff responded " I am offended and I don't care if you guys are joking." Antonio responded "you are not afraid that somebody is going to kill you, hurt you, or do something to your car?" Defendant was on clear notice that Plaintiff was being subjected to a hostile and racially charged work environment and failed to execute corporate policies set out to abate such discriminatory practices."

73. On or about September 10, 2014, Antonio stated to Plaintiff "you are not afraid that someone will kill you for telling on them?" Antonio further stated to Plaintiff "that someone has a hit on you." Plaintiff inquired as to who "had a hit" on her. Antonio responded that it is a "rumor going around."

74. On or about October 5, 2014, Roger Thurman stated to an employee he could give anyone a raise "and that is why we are being sued…if I could we wouldn't be being sued." Roger Thurman immediately thereafter turned to Plaintiff and stated, "by the way I have not forgotten about that suit either." It was self evident that Roger Thurman was referring to an EEOC charged filed by Plaintiff. This was a clear act of retaliation for Plaintiff opposing discriminatory practices in the workplace.

75. On or about October 24, 2014, Antonio states to Plaintiff "they [defendant] like the way Mexicans work…they like the way we work…we work hard for less…that is why the managers like Mexicans." Antonio further stated to Plaintiff "that we're assholes because we are hard workers." Thereafter Antonio asks Plaintiff "do you know why they pay me 13.00 an hour?...because I work hard and I have a lot to do…I am not going to tell you…but they like us Mexicans for work…that is what the managers tell us…because we're assholes to work." Antonio communicated this in Spanish to Plaintiff.

76. On or about October 17, 2014, Antonio looked at Alberto stating "they are trying to run somebody off" while each were looking at Plaintiff smiling with clear implication of retaliation by Defendant for Plaintiff filing an EEOC charge and/or reporting-opposing discriminatory practices.

77. On or about October 31, 2014, Plaintiff communicated a racial slur about "bananas" expressed by Alberto to Robbie (last name unknown) who is a manager and further failed to execute any remedial measures to abate discriminatory practices.

78. On or about November 23, 2015, Antonio asked Plaintiff "why do Black men get upset when people call them monkey's" and asked her "how to say monkey in English." Antonio asked Plaintiff why she would get offended at such racial slurs.

79. On or about November 26, 2014, Alberto stated to Plaintiff "I heard you and Alberto had a disagreement the other day." Plaintiff responded that she admonished him and that he should not call people "monkeys."

80. On or about December 5, 2014, Alberto stated to Tanya "tomorrow trash for you…there are three of them working in the kitchen tomorrow…while one is half [Plaintiff] it's the same shit." Tanya responded "yeah Alberto it is." Alberto responded "sorry no Mexicans tomorrow…Tanya no tips tomorrow." It was a clear implication from this discourse that the subject of the racially charge conversation was targeted towards Plaintiff.

81. On or about December 13, 2014, Mickey states to Manny "your cousins sucked the other day." Plaintiff responded, "I did not know that was your cousin." Mickey responded "that is not his family…we are just being racist." Derrick responded "I am sick of all these black people working here." This was stated in front Doug Boomer who is a manager and failed to execute any remedial measures to abate such a hostile and racially charge environment.

82. Plaintiff produced to counsel for Defendant(s) phone records demonstrating proof of communicating with the restaurant. Defendant(s) thereafter through counsel incredulously presented the issue as a clerical error. Defendant(s) attempted to offer reinstatement to Plaintiff for which she refused. Plaintiff was previously terminated and/or her terms and conditions of

employment were materially altered after a previous pregnancy as well. Management in this instance responded ineffectively and the environment became even more hostile rendering reinstatement implausible as this being a second termination or instance of her terms and/or conditions of employment being materially altered.

83. The effect of the unlawful employment practices complained of herein has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex as a female. Such discrimination practices were performed intentionally with malice and/or reckless indifference to the federally protected rights of Plaintiff.

84. The basis for termination proffered by Defendant(s) are false and serve as a pretext for termination therefore deserving no credence as a legitimate non-discriminatory act.

85. Defendant(s) are strictly liable for the acts averred herein because of Tammy Hickman's status as a general manager in the Cheddar's restaurant located in Cookeville, Tennessee, with authority to materially alter the terms and conditions of employment for employees under her supervision.

86. Plaintiff has suffered damages as a result of Defendant(s)' discriminatory actions in excess of $75,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant(s):

1. Declaration that the Defendant(s) violated Plaintiff's rights with regard to sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

2. Compensatory damages with prejudgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendant(s)' unlawful actions in an amount not less than $200,000.00 or to be determined;

3. Damages to Plaintiff for emotional distress, loss of enjoyment of life, embarrassment, and humiliation in an amount to be determined;

4. Punitive damages to Plaintiff in an amount to be determined;

5. Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses; and

6. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/Roland Mumford
Roland Mumford BPR 026495
Law Offices of Roland Mumford & Assoc.
242 West Main Street, No. 223
Hendersonville, TN 37075
Phone: 615.348.0070
Fax: 614.246.4110
Email: roland@mumfordlaw.net
Attorney for Plaintiff

## CERTFICATE OF SERVICE

      I hereby certify that on this 18th day of November, 2015, a true and exact copy of the foregoing Notice has been submitted, via Electronic Filing System, email, and U.S. Mail to the following:

Stanley Graham, Esq.
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Attorney for Defendant

                                          /s/Roland Mumford
                                          Roland Mumford